IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DWAYNE HASKINS, SR., TAMARA HASKINS, TAMIA HASKINS, AND HASKINS FAMILY FOUNDATION INC., | : : : : | |
| Plaintiffs, | : : | Civil Action No.: _____ |
| v. | : : | Electronically Filed |
| KALABRYA HASKINS, | : : : | |
| Defendant. | : : | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

**I.     INTRODUCTION**

The Plaintiffs, Dwayne Haskins, Sr., Tamara Haskins (collectively, "Mr. and Mrs. Haskins"), Tamia Haskins, and Haskins Family Foundation Inc., through their undersigned counsel of record and pursuant, bring this civil action for Declaratory Judgment against Kalabrya Haskins (hereinafter, the "Defendant"). An actual controversy exists between the parties regarding the proper interpretation of the Pennsylvania Rights of Publicity statute, 42 Pa. Cons. Stat. § 8316. All of the parties have a direct and substantial interest in this matter and this dispute is ripe for judicial resolution in the form of a declaratory judgment.

1

## II.     JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action, brought as a diversity matter pursuant to the Pennsylvania Declaratory Judgements Act, 42 Pa. C.S. §§ 7531 *et seq.*, and involving the interpretation of the Pennsylvania Rights of Publicity statute. Diversity Jurisdiction is proper because this dispute is between citizens of different states and the amount in controversy exceeds the sum of $75,000. (*See* Ex. H, Declaration of Philip Bertelsen, ¶ 5.)

2. This Court has personal jurisdiction over the Defendant as she has extensive contacts with the State of Pennsylvania, and, until recently, was a citizen of the State of Pennsylvania, specifically, Alleghany County.

3. Venue is proper in this district because a substantial portion of the events giving rise to this dispute, *i.e.*, the famous nature of the name, image and likeness of Dwayne Haskins, Jr., arose in this district.

## III.    PARTIES

4. Plaintiff Dwayne Haskins, Sr. is the surviving father of the deceased, Dwayne Haskins, Jr. Dwayne Haskins, Sr. is a citizen of the State of Maryland and resides at 12300 Grey Squirrel St., Clarksburg, MD 20774.

5. Plaintiff Tamara Haskins is the surviving mother of the deceased, Dwayne Haskins, Jr. Tamara Haskins is a citizen of the State of Maryland and resides at 12300 Grey Squirrel St., Clarksburg, MD 20774.

6. Plaintiff Tamia Haskins is the surviving sister of the deceased, Dwayne Haskins, Jr. Tamia Haskins is a citizen of the State of Maryland and resides at 12300 Grey Squirrel St., Clarksburg, MD 20774.

7. Plaintiff Haskins Family Foundation Inc. is a non-profit foundation, organized under IRC Section 501(c)(3). Haskins Family Foundation Inc. is a citizen of the State of Maryland and is headquartered at 12300 Grey Squirrel St., Clarksburg, MD 20774.

8. Defendant Kalabrya Haskins is the surviving spouse of the deceased, Dwayne Haskins, Jr. Kalabrya Haskins is a citizen of the State of Georgia.

IV.     **BACKGROUND FACTS**

9. Mr. and Mrs. Haskins are the surviving parents of the deceased, former professional football player, Dwayne Haskins, Jr. (hereinafter, "Dwayne, Jr.") (Ex. A, Declaration of Dwayne Haskins, Sr., ¶ 1; Ex. B, Declaration of Tamara Haskins, ¶ 1.) Dwayne, Jr. played quarterback in the NFL for three seasons, including as a first round draft pick for the Washington Redskins from 2019-2020, and then for the Pittsburgh Steelers from 2021-2022. (Ex. A at ¶ 1; Ex. B at ¶ 1; Ex. C, Declaration of Tamia Haskins, ¶ 1. )

10. Prior to being drafted into the NFL, Dwayne, Jr. was a standout quarterback for the Ohio State Buckeyes. (Ex. A at ¶ 2; Ex. B at ¶ 2.) While at Ohio State, Dwayne, Jr. claimed the single-season passing and touchdown records

for the school and the Big Ten conference by eclipsing the 4,000-passing yards mark and throwing 50 touchdowns, making him just one of eight NCAA quarterbacks to ever throw 50 touchdowns in a single season. (Ex. A at ¶ 2; Ex. B at ¶ 2.) Dwayne, Jr.'s college performance earned him first-team All-Big Ten honors, in addition to six Big Ten Offensive Player of the Week awards, the Graham-George Offensive Player of the Year, the Griese-Breese Quarterback of the Year, and the Male Ohio State Athlete of the Year awards. (Ex. A at ¶ 2; Ex. B at ¶ 2.) He was also named as a semifinalist for the Maxwell Award and finished third in the Heisman Trophy voting. (Ex. A at ¶ 2; Ex. B at ¶ 2.)

11. The Haskins Family is a very close-knit family. (Ex. A at ¶ 3; Ex. B at ¶ 3; Ex. C, ¶2.) Dwayne, Jr.'s father, Dwayne Haskins, Sr., is a marketing and promotions consultant and his mother, Tamara Haskins, is a financial advisor and former CPA accountant (Ex. A at ¶ 3; Ex. B at ¶ 3.) Dwayne, Jr. and his sister, Tamia Haskins, were the only two children of Mr. and Mrs. Haskins. (Ex. A at ¶ 3; Ex. B at ¶ 3.) The family gave Dwayne, Jr. the nickname "Simba" when he was a child, taken from the protagonist young lion in the film, "The Lion King." (Ex. A at ¶ 3; Ex. B at ¶ 3; Ex. C at ¶ 2.) Having grown up in a very spiritual family in Highland Park, New Jersey, and Gaithersburg, Maryland, Dwayne, Jr. was a devout Christian and often expressed the importance of his faith as being a major part of his athletic success. (Ex. A at ¶ 4; Ex. B at ¶ 4; Ex. C at ¶ 3.)

12. On April 9, 2022, en route to traveling back home to the Pittsburgh, Pennsylvania area from South Florida, where he was training with several of his Pittsburgh Steelers teammates, Dwayne, Jr. was struck and killed by a truck on Interstate 595 near Ft. Lauderdale, Florida. (Ex. A at ¶ 5; Ex. B at ¶ 5; Ex. C at ¶ 4.) He was 24 years old at the time of his death. (Ex. A at ¶ 5; Ex. B at ¶ 5; Ex. C at ¶ 4.)

13. Unbeknownst to The Haskins Family, Dwayne, Jr. and Defendant, Kalabrya Haskins, were married on March 19, 2021, which was a little more than a year prior to his death in April 2022. (Ex. A at ¶ 6; Ex. B at ¶ 6; Ex. C at ¶ 5.) Mr. and Mrs. Haskins had never met the Defendant before she married their son and they know that she was not in his life prior to 2020. (Ex. A at ¶ 6; Ex. B at ¶ 6; Ex. C at ¶ 5.)

14. Ever since the tragic death of their son and brother, The Haskins Family has experienced constant harassment from the Defendant whenever they have attempted to reference his name, image and likeness in public forums such as social media. (Ex. A at ¶ 7; Ex. B at ¶ 7; Ex. C at ¶ 6.) For instance, the Defendant has contacted Instagram to have the accounts of Dwayne Haskins, Sr. and Tamia Haskins disabled, as recently as May 2024. (Ex. A at ¶ 7; Ex. B at ¶ 7; Ex. C at ¶ 6.)

15. Because the decision by Instagram to disable both accounts was clearly erroneous, The Haskins Family is in the process of waging formal challenges to Instagram. (*See* Ex. D, Letter to Instagram Challenging Disabling of Account of Dwayne Haskins, Sr.; Ex. E, Letter to Instagram Challenging Disabling of Account of Tamia Haskins.) According to Instagram, Dwayne Haskins, Sr.'s account was disabled because he created "an account that looks like it belongs to a celebrity." (Ex. D.) This decision was made despite the fact that Dwayne Haskins, Sr. simply shares the same name as his famous son, but has not otherwise posted any content on Instagram. (Ex. D.) Moreover, there are other persons who go by the name Dwayne Haskins on Instagram whose accounts have not been disabled. (Ex. D.)

16. As for the account of Tamia Haskins, who was very close to her older and only sibling, Instagram disabled her account because, on Dwayne, Jr.'s 27th birthday – May 3, 2024 – his younger sister posted a photograph of her brother, along with a portion of a letter that he wrote to his family in 2021, entitled "Who I want to be." (Ex. C, ¶ 9.) The post by Tamia Haskins stated as follows:

> Today, May 3, Dwayne would have been 27 years old. To celebrate his birthday, I wanted to create a piece to honor him. In the last year of his life, Dwayne wrote a letter titled, "Who I want to be" and shared it with me. It's an honor to share how Dwayne saw himself. Dwayne wrote, "So the man that I am now, he's accountable, he's god-fearing, he's hard-working, he's a competitive freak, a loving son, a goofy brother, a caring

6

>friend, and a compassionate partner." The quote is how he wants to be remembered. "Who I want to be" is just a small token of appreciation for the light Dwayne was not only in my life but everyone's. . . . Happy Birthday, Bud; you will always be my Goofy Brother. I love you for eternity.

(Ex. C, ¶ 9.) Tamia Haskins also posted an image of custom football leather, her favorite photo of her brother, and her handwriting and the handwriting of her mother. (Ex. C, ¶ 9.) The disabling of Tamia Haskins' Instagram account has adversely affected her livelihood as her clients have been unable to reach her or to see her work, and she no longer has access to the past direct messages (DMs) that she shared with Dwayne, Jr. or any private social interactions the siblings enjoyed on Instagram through the years; this has exacerbated the level of emotional distress and pain that Tamia Haskins has suffered. (Ex. C, ¶ 9.)

17.     In addition, the Defendant has challenged The Haskins Family's establishment of a non-profit foundation that goes by the name, Haskins Family Foundation Inc. (one of the plaintiffs in this action) (Ex. F, Cease and Desist Letter from Defendant's Attorney to Haskins Family Foundation Inc.) Haskins Family Foundation Inc. was established exactly one year prior to Dwayne. Jr.'s death. (Ex. A at ¶ 9; Ex. B at ¶ 9; Ex. C at ¶ 8.) Moreover, Defendant has contacted Instagram requesting that Haskins Family Foundation Inc.'s Instagram account be disabled. (Ex. A at ¶ 9; Ex. B at ¶ 9; Ex. C at ¶ 8.)

18. In light of these consistent acts of harassment by the Defendant, the Haskins Family, though its legal counsel, contacted counsel for the Defendant by letter, dated June 6, 2024. The letter stated, in part:

> It has come to our attention that your client, Kalabrya Haskins, has taken certain actions since the death of Dwayne Haskins, Jr. in April 2022 that have been intended to, and have had the effect of, undermining the rights of the Haskins Family to publicly reference the name, image and likeness of their beloved son and brother. We have received evidence that such actions have included, but are not limited to, improperly challenging the existence of the Haskins Family Foundation Inc., as well as formally requesting the disablement of the Instagram social media accounts of Dwayne Haskins, Sr., Tamia Haskins, and the Haskins Family Foundation Inc.
>
> By this letter, and on behalf of the Haskins Family, we are demanding that you immediately cease and desist such improper conduct. We furthermore require that you provide us with written assurances by no later than Monday, June 10, 2024, that your client will no longer pursue the referenced actions or any other such actions. You may provide the written assurances by return email.

(Ex. G, Cease and Desist Letter to Defendant's Counsel from Plaintiffs' Counsel.)

19. As of the date of this filing, Defendant's counsel has not provided the assurances requested by Plaintiffs' counsel in the above-referenced letter. (Ex. A at ¶ 9; Ex. B at ¶ 9; Ex. C at ¶ 8.)

20. Defendant has taken the actions she has taken, as discussed above, because of a misinterpretation and misapplication of Pennsylvania's Right of

Publicity statute, 42 Pa. Cons. Stat. § 8316. The statute protects "[a]ny natural person whose name or likeness has commercial value and is used for any commercial or advertising purpose." The term "natural person" is defined as "a living person or a deceased person who was domiciled within [Pennsylvania] at the time of such person's death." § 8316 (e). However, the statute has expressed exceptions, including a "fair use" exception that takes outside of the prohibitions of statute a publication in which: "***The name or likeness is associated with a news report or presentation having a <u>public interest</u>.***" § 8316 (e) (emphasis added).

21. **(THIS PARAGRAPH IS SUBJECT TO THE PLAINTIFFS' ACCOMPANYING MOTION FOR *IN CAMERA* REVIEW BY THE JUDGE AND THUS SHOULD <u>NOT</u> BE SEEN BY DEFENDANT OR HER COUNSEL, OR OTHERWISE EXPOSED TO THE PUBLIC.)** ████

████

████

████

████

████

████

████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

██████

22. For all of the above reasons, Plaintiffs bring this action to request a ruling that Defendant Kalabrya Haskins is legally prohibited from challenging, *in any manner*, the Plaintiffs' Project. In light of the Defendant's actions, as detailed in Paragraphs 7-12, above, and particularly because Defendant's counsel has refused to provide the assurances requested by Plaintiffs' counsel in his letter of June 6, 2024 (Ex. G), Plaintiffs are in reasonable apprehension that the Defendant will attempt to undermine their publication of the Project, which attempts may

include, but not be limited to, threatening persons, entities, and other third parties working with the Plaintiffs with legal action and intimidation, with cease and desist letters and other communications to undermine the Project. Furthermore, because of her misinterpretation and misapplication of the statute, the Defendant could seek an injunction, pursuant to the Pennsylvania Rights of Publicity statute, 42 Pa. Cons. Stat. § 8316 (a)(1), against the Project. Such conduct would constitute an invasion or threatened invasion of the Plaintiffs' legal rights, and the ruling requested by the Plaintiffs here will end the existing controversy.

## V. CAUSE OF ACTION

### Count One – Declaratory Judgment

23. The foregoing paragraphs are incorporated by reference as though fully set forth herein.

24. Under the Declaratory Judgments Act, "Any person . . . whose rights, status, or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise, and obtain a declaration of rights, status, or other legal relations thereunder." 42 Pa. C.S. § 7533.

25. The purpose of the Declaratory Judgments Act is to "settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other

legal relations, and is to be liberally construed and administered." 42 Pa. C.S. § 7541(a).

26. There is a genuine and real controversy as relates to whether the Plaintiffs have a legal right to proceed with their Project, discussed and described in Paragraph 14, above, because the Project falls under a "fair use" exception to the Pennsylvania Rights of Publicity statute. The Plaintiffs' Project falls under the "fair use" exception to the Pennsylvania Rights of Publicity statute because it is a publication in which: "***The name or likeness [of Dwayne Haskins, Jr.] is associated with a news report or presentation having a <u>public interest</u>.***" § 8316 (e) (emphasis added). Defendant has refused to agree that she will discontinue her attempts to assert the Pennsylvania Rights of Publicity statute against the Plaintiffs for publishing "fair use" matters about their son and brother.

27. Accordingly, there is a genuine and real controversy as to whether the Defendant can legally require that the Plaintiffs obtain her permission or approval to publish the Project. Plaintiffs, therefore, respectfully request that this Honorable Court, pursuant to the Declaratory Judgments Act, 42 Pa. C.S. § 7531 *et seq.*, issue a declaratory judgment holding that the Defendant cannot require that the Plaintiffs obtain her permission or approval to publish the Project, and that she is legally precluded from doing anything whatsoever to undermine the Project.

28. An actual controversy exists between the parties in which the parties all have a direct and substantial interest. The matter is ripe for judicial resolution in the form of a declaratory judgment, pursuant to 42 Pa. C.S. § 7541.

**WHEREFORE**, the Plaintiffs, Dwayne Haskins, Sr., Tamara Haskins, Tamia Haskins, and The Haskins Family Foundation Inc., respectfully request that the Court enter a judgment (i) declaring that Defendant Kalabrya Haskins cannot assert the Pennsylvania Right of Publicity statute against the Plaintiffs' publication of the Project, (ii) declaring that Defendant Kalabrya Haskins is legally precluded from taking action, *in any manner*, to undermine the Project, and (iii) providing any other relief that this Court deems just and proper.

Dated: July 29, 2024

Respectfully submitted,

By: <u>/s/ Matthew A. Bole</u>
Matthew A. Bole (Bar No. 311642)
**Fiffik Law Group, P.C.**
Foster Plaza 7
661 Anderson Dr., Suite 315
Pittsburg, PA 15220
Tel: (412) 391-1014
mbole@fiffiklaw.com

<u>/s/ Manotti L. Jenkins</u>
Manotti L. Jenkins
**Law Offices of Manotti L. Jenkins, LTD.**
161 North Clark Street
Suite 1700
Chicago, Illinois 60601
Tel: (312) 208-9537
mj@mljlawoffices.com
(*pro hac vice pending)*

Attorneys for the Plaintiffs