IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DWAYNE HASKINS, SR, TAMARA
HASKINS, TAMIA HASKINS, *and*
HASKINS FAMILY FOUNDATION, INC.,

*Plaintiffs*,

v.

KALABRYA HASKINS,

*Defendant*.

Civil Action No. 2:24-cv-1085

Hon. William S. Stickman IV

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiffs, Dwayne Haskins, Sr., Tamara Haskins, Tamia Haskins, and the Haskins Family Foundation Inc. ("Foundation") (collectively "Plaintiffs") brought this action against Defendant Kalabrya Haskins ("Defendant"). (ECF No. 17). At Count I, Plaintiffs seek a declaratory judgment under the Pennsylvania Declaratory Judgments Act, 42 Pa. C.S. § 7531 *et seq.*, declaring that Defendant (1) "cannot assert the Pennsylvania Right of Publicity statute against Plaintiffs' publication of [their documentary project]," and (2) "is legally precluded from taking action, *in any manner*, to undermine the [documentary project]." (*Id.* ¶ 28) (emphasis in original). Defendant filed a motion to dismiss Plaintiffs' complaint ("Motion") (ECF No. 33) and supporting brief (ECF No. 34). For the following reasons, the Court will grant Defendant's Motion and dismiss Plaintiffs' complaint.

I.   **FACTUAL BACKGROUND**

Dwayne Haskins, Sr. and Tamara Haskins are the parents of the deceased, Dwayne Haskins, Jr. (ECF No. 17, ¶¶ 4-5). Tamia Haskins is the sister of Dwayne Haskins, Jr. (*Id.* ¶ 6).

1

The Foundation is a non-profit organization that was established one year prior to Dwayne Haskins, Jr.'s death. (*Id.* ¶¶ 7, 17). Collectively, Plaintiffs brought this action against Defendant, Dwayne Haskins, Jr.'s surviving spouse. (*Id.* ¶ 8). Defendant is the executor of Dwayne Haskins, Jr.'s estate. (ECF No. 17-1, ¶ 13).

Dwayne Haskins, Jr. was a professional football player in the National Football League ("NFL") for three seasons. (ECF No. 17, ¶ 9). On April 9, 2022, he was struck and killed by a vehicle on Interstate 595 near Fort Lauderdale, Florida. (*Id.* ¶ 12). Plaintiffs allege that "ever since the tragic death of [Dwayne Haskins, Jr.], [t]he Haskins Family has experienced constant harassment from [] Defendant whenever they have attempted to reference his name, image and likeness in public forums such as social media." (*Id.* ¶ 14). For example, Plaintiffs allege that in May 2024, Defendant contacted Instagram to have the accounts of Dwayne Haskins, Sr. and Tamia Haskins disabled because of their posts relating to Dwayne Haskins, Jr. (*Id.*). Further, Plaintiffs allege that Defendant has challenged the Foundation's establishment and attempted to have the Foundation's Instagram account disabled. (*Id.* ¶ 17).

Plaintiffs' attorney contacted Defendant's counsel via a letter dated June 6, 2024. (*Id.* ¶ 18). That letter requested that Defendant cease and desist from "undermining the rights of the Haskin Family to publicly reference the name, image, and likeness, of their beloved son and brother." (*Id.*). The letter requested written assurances that Defendant would no longer pursue challenging the existence of the Foundation, formally requesting the disablement of the Haskins' Instagram accounts, "or any other such actions." (*Id.*). Defendant did not provide the assurances requested by Plaintiffs' attorney. (*Id.* ¶ 19).

Plaintiffs are producing a documentary "to tell the family's story," including Dwayne Haskins, Jr.'s story. (*Id.* ¶ 21). The documentary project is allegedly near completion and will

include at least fifteen (15) years of videos and images. (*Id.*). Plaintiffs brought this action requesting a declaratory judgment under the Pennsylvania Declaratory Judgments Act ruling that Defendant "is legally prohibited from challenging, *in any manner*, the Plaintiffs' Project." (*Id.* ¶ 22) (emphasis in original). Plaintiffs allege that:

> In light of the Defendant's actions, . . . and particularly because Defendant's counsel has refused to provide the assurances requested by Plaintiffs' counsel, . . . Plaintiffs are in reasonable apprehension that the Defendant will attempt to undermine their publication of the Project, which attempts may include, but not be limited to, threatening persons, entities, and other third parties working with the Plaintiffs with legal action and intimidation, with cease and desist letters and other communications to undermine the Project. Furthermore, because of her misinterpretation and misapplication of [Pennsylvania's Right of Publicity statute], [] Defendant could seek an injunction . . . against the Project.

(*Id.* ¶ 22). Plaintiffs further contend that "[t]here is a genuine and real controversy as relates to whether [] Plaintiffs have a legal right to proceed with their Project . . . because the Project falls under a 'fair use' exception to the Pennsylvania Rights of Publicity statute." (*Id.* ¶ 26). Thus, Plaintiffs argue, there is a legal question as to whether Defendant can legally require Plaintiffs to obtain her approval or permission to publish the documentary project. (*Id.* ¶ 27).

## II.    STANDARD OF REVIEW

Under Rule 12(b)(1), a court must grant a motion to dismiss if there is a lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). A plaintiff bears the burden of persuasion that federal jurisdiction is present. *Saint Vincent Health Ctr. v. Shalala*, 937 F. Supp. 496, 501 (W.D. Pa. 1995) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). The threshold to survive a motion to dismiss under Rule 12(b)(1) is lower than that under Rule 12(b)(6). *Lunderstadt v. Colafella*, 886 F.2d 66, 70 (3d Cir. 1989). This is because dismissal for lack of jurisdiction cannot be predicated on the mere probability that a plaintiff's legal theories are false; a court will only dismiss for a lack of jurisdiction if a plaintiff's legal theories (1) are solely

proffered to obtain federal jurisdiction but otherwise are immaterial, or (2) are "insubstantial on their face." *Growth Horizons, Inc. v. Del. Cnty., Pa.*, 983 F.2d 1277, 1280 (3d Cir. 1993) (quoting *Bell v. Hood*, 327 U.S. 678, 773, 776 (1946)).

### III.  ANALYSIS

Article III, Section 2 of the United States Constitution limits federal jurisdiction to actual "cases" and "controversies." U.S. CONST. art. III, § 2. "It was intended to ensure that federal courts decide only those disputes of 'a Judiciary nature,' and stands as a direct prohibition on the issuance of advisory opinions." *Armstrong World Indus., Inc. by Wolfson v. Adams*, 961 F.2d 405, 410 (3d Cir. 1992). To satisfy Article III's "case or controversy" requirement, an action must present a legal controversy that (1) "is real and not hypothetical," (2) "affects an individual in a concrete manner so as to provide the factual predicate for reasoned adjudication," and (3) "sharpen[s] the issues for judicial resolution." *International Bhd. of Boilermakers v. Kelly*, 815 F.2d 912, 915 (3d Cir. 1987). The case or controversy requirement must be met regardless of the type of relief sought, including declaratory relief. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950); *see also Step–Saver Data Systems, Inc. v. Wyse Technology*, 912 F.2d 643, 646-47 (3d Cir. 1990) (discussing the applicability of the case or controversy requirement in the declaratory judgment context).

The case or controversy requirement has engendered numerous justiciability doctrines that further define the limits of federal jurisdiction. Among these is the ripeness doctrine, which determines when a party may bring an action.[1] *See Thomas v. Union Carbide Agric. Prods. Co.*,

---

[1] Defendant does not argue that Plaintiffs' complaint is not ripe for judicial resolution. (ECF Nos. 33, 34). Nevertheless, the Court addresses ripeness because the United States Court of Appeals for the Third Circuit has stated that "considerations of ripeness are sufficiently important that the court is required to raise the issue *sua sponte* even though the parties do not." *Peachlum v. City of York, Pennsylvania*, 333 F.3d 429, 433 (3d Cir. 2003).

473 U.S. 568, 580 (1985) ("[R]ipeness is peculiarly a question of timing."). "[I]ts basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Lab. v. Gardner*, 387 U.S. 136, 148 (1967). In determining whether an action is ripe for judicial review, the Supreme Court of the United States generally looks to "the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration." *Id.* at 149. In the declaratory judgment context, the Third Circuit has refined this test "because of the difficulty in defining ripeness in actions initiated before an 'accomplished' injury is established." *Armstrong*, 961 F.2d at 411. The Third Circuit directs courts to consider (1) the "adversity of interest" between the parties, (2) the "conclusivity" that a declaratory judgment would have on the legal relationship between the parties, and (3) the "practical help, or utility," of a declaratory judgment. *Step–Saver*, 912 F.2d at 647.

1. **Adversity of Interest**

The Court holds that there is no adversity of legal interests between the parties for purposes of the first ripeness prong. "Although the [plaintiff] need not have suffered a 'completed harm' to establish adversity of interest, . . . it is necessary that there be a substantial threat of real harm and that the threat 'must remain real and immediate throughout the course of the litigation.'" *Presbytery of New Jersey of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1463 (3d Cir. 1994) (internal citations omitted). "Where the plaintiff's action is based on a contingency, it is unlikely that the parties' interest will be sufficiently adverse to give rise to a case or controversy within the meaning of Article III." *Armstrong*, 961 F.2d at 411–12.

Plaintiffs did not adequately plead that there is a substantial threat of harm that will remain real and immediate throughout the course of the litigation. Perhaps to bolster their argument that this action does not present a hypothetical situation, Plaintiffs point to several facts: (1) Defendant

challenged the Foundation's establishment, (2) Defendant contacted Instagram to have the Foundation, Dwayne Haskins, Sr., and Tamia Haskins's Instagram accounts disabled, and (3) Defendant did not respond to Plaintiffs' cease-and-desist letter. While these facts may demonstrate that there is tension between Plaintiffs and Defendant concerning the use of Dwayne Haskins, Jr.'s name, image, and likeness, these facts do not establish adversity of interest between the parties regarding Plaintiffs' documentary project. According to Plaintiffs' complaint, Defendant has not taken any action to challenge the creation or publication of Plaintiffs' documentary project, nor has she threatened to take any such action. Plaintiffs' only basis to request a declaratory judgment appears to be that Defendant previously challenged their actions regarding the name, image, and likeness of Dwayne Haskins, Jr. Thus, they seem to assume that Defendant will challenge their documentary project solely based on her past (relatively unrelated) actions. This sort of logic does not create adversity of interests between the parties. It presents the sort of hypothetical and speculative reasoning that the ripeness doctrine is meant to prevent.

When considering whether there is adversity of interests between parties, the proper focus is on the defendant's actions because "apprehension alone, if not inspired by defendant's actions, does not give rise to an actual controversy." *Dunn Computer Corp. v. Loudcloud, Inc.*, 133 F. Supp. 2d 823, 827 (E.D. Va. 2001). "[W]hile direct evidence of threatening contacts initiated by the defendant or a background of litigation between the parties is strong evidence of a reasonable apprehension of litigation, an objectively reasonable apprehension of imminent litigation must be determined from the totality of the circumstances." *Id.* These principles, applied here, point persuasively to the absence of a case or controversy as the facts fall short of establishing an objectively reasonable apprehension of imminent litigation. While there is a background of litigation between the parties in state court, Defendant has not taken any threatening action with

regards to Plaintiffs' documentary project. That Defendant allegedly challenged the Foundation's establishment and attempted to disable certain Plaintiffs' Instagram accounts are actions wholly separate from the instant matter. While these issues may pertain to Plaintiffs' use of the name, image, and likeness of Dwayne Haskins, Jr., these actions have no relation to Plaintiffs' documentary project.

Further, Defendant's alleged failure to respond to Plaintiffs' cease-and-desist letter is not sufficient to render this action ripe. *See Intralox, LLC v. Habasit Belting, Inc.*, No. CIV.A. 04-840, 2004 WL 1497713, at *4 (E.D. La. July 2, 2004) (holding that an action was not ripe because there was no concrete threat of immediate litigation even when the defendant had sent the plaintiff a cease-and-desist letter indicating that the plaintiff's failure to cease its conduct would force the defendant to "consider its legal rights and options"); *Dunn*, 133 F. Supp. at 827 ("[O]ne cease and desist letter does not a case or controversy make where . . . that letter invites negotiation, but does not explicitly threaten litigation, and was the defendant's sole act directed at plaintiff."). Here, unlike in *Intralox* and *Dunn*, the cease-and-desist letter was sent by Plaintiffs – not by Defendant. This fact further undermines any possibility that this action presents a ripe case or controversy. Defendant's failure to respond to Plaintiffs' cease-and-desist letter does not create a reasonable apprehension of imminent litigation – especially when that letter was extraordinarily broad and did not once mention Plaintiffs' documentary project.

### 2. Conclusiveness of the Judgment

Conclusiveness is a short-hand term for whether a declaratory judgment would definitively decide the parties' rights. *Step–Saver*, 912 F.2d at 648. It also addresses the extent to which further factual development of the case would facilitate a decision so as to avoid issuing advisory opinions. *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1154-55 (3d Cir. 1995). A case is generally

ripe if any remaining questions are purely legal ones. *Id.* Conversely, a case is not ripe if further factual development is required. *Id.* For the same reasons discussed in the adversity of interests inquiry, the Court finds that the second ripeness prong is unsatisfied. No judgment can be entered by the Court that would definitively decide the rights of the parties because Defendant has not taken any action, or threatened to take any action, to challenge Plaintiffs' documentary project.

Plaintiffs speculate that Defendant may challenge the documentary under the Pennsylvania Right of Publicity statute "because of a misinterpretation and misapplication" of the statute. (ECF No. 17, ¶¶ 20, 22). Plaintiffs request that the Court declare that Defendant "cannot assert the Pennsylvania Right of Publicity statute against the Plaintiffs' publication" of their documentary project. (*Id.* ¶ 28). However, Plaintiffs also request a declaration that Defendant "is legally precluded from taking action, *in any manner*, to undermine [Plaintiffs' documentary project]." (*Id.*) (emphasis in original). The Court does not have the power to grant such sweeping relief. Moreover, Plaintiffs' request for such relief demonstrates that this action is not factually developed. The remaining questions are not merely legal. Plaintiffs and the Court do not know how, if at all, Defendant will challenge Plaintiffs' documentary project. Thus, any judgment of the Court would not definitively decide the parties' rights.

Further, review of Plaintiffs' claims, most especially Plaintiffs' request that Defendant be precluded from undermining their documentary project *in any manner*, would require time-consuming judicial consideration of the details of Plaintiffs' documentary project. It would also require the Court to predict all of Defendant's potential recourses to challenging Plaintiffs' project. *See Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 734 (1998) (considering expenditure of judicial resources in ripeness analysis). This type of review threatens the kind of hypothetical and abstract disagreements that the ripeness doctrine seeks to avoid.

### 3. Utility

Finally, the Court considers the extent to which a declaratory judgment would be useful to the parties. Unlike the conclusivity inquiry, which addresses whether the parties' rights will be definitively decided by a declaratory judgment, the utility inquiry addresses whether the parties' plans of action will likely be affected by a declaratory judgment. *Armstrong*, 961 F.2d at 423. Under this factor, the Court may also consider the hardship to the parties of withholding judgment. *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 344-45 (3d Cir. 2001). The Court concludes that Plaintiffs' requested declaratory judgment would not be sufficiently useful to the parties.

A holding that Defendant is prohibited from undermining Plaintiffs' documentary project through the Pennsylvania Rights of Publicity statute (or in any other manner) would obviously be useful to Plaintiffs as they would be spared the hardship of participating in further legal proceedings regarding Defendant and their documentary project. Almost any judicial judgment affecting the rights of a party is useful, to some degree, as a form of risk reduction or a reduction in future uncertainty. "However, to render a requested declaratory judgment ripe—and to make the utility prong mean anything—the action must achieve more than that minimum." *See AXIS Ins. Co. v. PNC Fin. Servs. Grp., Inc.*, 135 F. Supp. 3d 321, 329 (W.D. Pa. 2015). It may be easier and less expensive for Plaintiffs to mount one blanket legal challenge against Defendant now, rather than to pursue challenges to each of Defendant's potential future actions. However, the Supreme Court "has not considered . . . litigation cost-saving sufficient by itself to justify review in a case that would otherwise be unripe." *Ohio Forestry*, 523 U.S. at 735 (1998); *see also Florida Power & Light Co. v. EPA*, 145 F.3d 1414, 1421 (D.C. Cir. 1998) ("[T]he burden of participating in further . . . judicial proceedings . . . do[es] not constitute sufficient hardship for the purposes of

ripeness."). Thus, potential ease of litigation to Plaintiffs does not render the instant matter ripe for judicial resolution. Further, there is not sufficient hardship to Plaintiffs or Defendant if the Court withholds judgment.

If the Court were to find in favor of Plaintiffs, Defendant's future plans of action may be affected to the extent that Defendant would (presumably) not be able to "undermine" Plaintiffs' documentary project. Notably, this logic assumes that Defendant intends to challenge the documentary project. However, if the Court were to find in favor of Defendant, the decision would have minimal utility. Plaintiffs would likely continue producing their documentary project and Defendant would be free to challenge the project in any manner that she wishes – the same outcome that may occur if the Court withholds judgment. While some uncertainty would be resolved if the Court rendered a declaratory judgment, for the most part the parties would be in no better position to determine what course of action to take than they are now.[2]

---

[2] Furthermore, the Court notes that under 42 Pa. C.S. § 7537, the Court "may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding." 42 Pa. C.S. § 7537. Even if the instant matter was ripe for judicial resolution, the Court would refuse to render a declaratory judgment because the requested remedy, under the specific circumstances, is so broad that it would not terminate the uncertainty between the parties giving rise to the proceeding.

### IV. CONCLUSION

The Article III and prudential requirements of ripeness, as defined by the Third Circuit's *Step-Saver* test, are not met here. Furthermore, even if the Court could properly hear this case under Article III, it would refuse to render a declaratory judgment under 42 Pa. C.S. § 7537 because any judgment would not terminate the uncertainty between the parties giving rise to this proceeding. Therefore, the Court will dismiss Plaintiffs' complaint without prejudice.[3] Orders of Court will follow.

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

1/27/25
Dated

---

[3] Because the Court finds that the matter is not ripe for judicial resolution, the Court does not address any other arguments raised in Defendant's Motion (ECF Nos. 33, 34).